SECOND DIVISION

No. 1-09-2135

| | | |
|---|---|---|
| JAMES MCHUGH CONSTRUCTION CO., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| ZURICH AMERICAN INSURANCE COMPANY, an Illinois Corporation, | ) ) ) | Honorable Peter A. Flynn, Judge Presiding. |
| Defendant-Appellee. | ) ) ) | |

JUSTICE KARNEZIS delivered the opinion of the court:

This appeal arises from an order of the circuit court granting judgment on the pleadings pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) (the Code) to defendant Zurich American Insurance Company (Zurich) in plaintiff James McHugh Construction Co.'s (McHugh) declaratory judgment action and denying McHugh's cross-motion for judgment on the pleadings. McHugh was an additional insured under two insurance policies issued by Zurich to two of McHugh's subcontractors. In separate suits, the subcontractors filed third-party contribution actions against McHugh after two McHugh employees filed personal injury lawsuits against the subcontractors. Zurich refused to defend McHugh in the

contribution actions. The court agreed, finding the employee exclusion in the policies relieved Zurich of any duty to defend McHugh in the contribution actions. McHugh appeals, arguing the court erred in finding that the term "the insured" in the employee exclusions unambiguously excludes coverage for the contribution claims where the underlying injuries were to McHugh's employees. We affirm.

Background

McHugh is a general contractor. When overseeing a construction project, McHugh subcontracts portions of the work to assorted subcontractors. In 2005, McHugh was the general contractor on a construction project at a building called The Chandler, in Chicago (Chandler project). As part of the Chandler project, it entered into an agreement with JMS Electric, Inc. (JMS), calling for JMS to design and build an electrical system. JMS held a general liability policy with Zurich. Pursuant to its agreement with McHugh, JMS added McHugh as an additional insured under the Zurich policy.

In 2008, McHugh employee Thomas Searle filed a personal injury action against JMS. He asserted he was injured while working on the Chandler project jobsite when, due to JMS's negligence, he fell into a ditch put in place by JMS for the purpose of installing electrical components. JMS filed a third-party complaint for contribution against McHugh alleging McHugh's negligence contributed to cause Searle's injuries. McHugh tendered its defense to Zurich, requesting Zurich defend and indemnify it against JMS's complaint. Zurich denied coverage pursuant to the employer's liability

exclusion contained in the policy which provided that the insurance did not apply to bodily injury to

"[a]n 'employee' of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business."

Zurich similarly denied coverage for a claim against McHugh filed by Stevenson Crane Service (Stevenson). In 2007, McHugh had subcontracted portions of a project it was overseeing at the Chicago Transit Authority's Howard Red Line rail station (Howard project) to Perdel Contracting Corporation (Perdel). Perdel, in turn, had subcontracted with Stevenson Crane Service (Stevenson) for the use of Stevenson's crane on the Howard project. As part of its agreement with McHugh, Perdel had added McHugh as an additional insured to the general liability insurance policy it had with Zurich.

McHugh's employee Paul Novovesky claimed to have been injured while working on the Howard project in 2007. He filed a personal injury action against Stevenson and Perdel, alleging his injury occurred when a storage box being moved by a crane hit a sign and the sign fell on him. He alleged the crane was provided by Stevenson in furtherance of its responsibilities under the subcontract with Perdel. Stevenson filed a third-party complaint for contribution against McHugh, alleging McHugh's negligence and omissions were a contributing cause in Novovesky's accident. McHugh tendered its defense to Zurich, asserting that the injury to Novovesky arose as result of Perdel's

use of a crane it rented from Stevenson and, as an additional insured under Perdel's policy with Zurich, McHugh was entitled to defense and indemnification from Zurich. Zurich denied coverage pursuant to the employer's exclusion in the policy, which is the same as that in the Zurich-JMS policy. It asserted that both Novovesky's complaint and Stevenson's third-party complaint allege Novovesky was an employee of McHugh and his injuries arose out of his employment with McHugh and the exclusion, therefore, applied.

McHugh filed a declaratory judgment action in chancery court requesting the court to declare the rights of the parties under both the Zurich-JMS policy and the Zurich-Perdel policy and compel Zurich to defend and indemnify McHugh in the JMS action and the Stevenson action.[1]

Zurich filed a motion for judgment on the pleadings pursuant to section 2-615, arguing that, although McHugh was "an insured" under each policy, the employer's liability exclusion in the policies defeated any coverage for McHugh because the plaintiffs in the underlying cases were McHugh employees seeking damages for injuries arising from their employment with McHugh. McHugh filed a cross-motion for judgment on the pleadings pursuant to section 2-615(e) arguing the employer's liability exclusion

---

[1] McHugh also filed a breach of contract count against Zurich for its failure to honor its obligations to McHugh as an additional insured under the two policies but that count is not at issue here.

did not apply to McHugh. McHugh asserted the exclusion barred coverage for injuries to employees of "the insured"; McHugh was "an insured" under the policy but was not "the insured"; the subcontractors were "the insured" under their respective policies; and, therefore, there was coverage for the claims by McHugh's employees.

On July 16, 2009, the court granted Zurich's motion for judgment on the pleadings and denied McHugh's cross-motion, finding that Zurich's duty to defend McHugh did not arise because the factual bases underlying both complaints concern the bodily injuries suffered by two McHugh employees in the furtherance of their employment with McHugh and McHugh was "the insured" under this particular fact situation. McHugh timely appealed.

Analysis

McHugh argues the court erred in granting judgment on the pleadings to Zurich and denying McHugh's judgment on the pleadings. A section 2-615(e) judgment on the pleadings is proper where the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Intersport, Inc. v. National Collegiate Athletic Ass'n,* 381 Ill. App. 3d 312, 318 (2008). We review a circuit court's order granting judgment on the pleadings *de novo. Intersport, Inc.,* 381 Ill. App. 3d at 318.

The court determined Zurich had no duty to defend McHugh in the contribution actions. To determine whether an insurer has a duty to defend and provide coverage for its insured, the court must look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Outboard*

*Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). It is uncontested that McHugh is an additional insured under the Zurich-JMS and Zurich-Perdel policies. Accordingly, Zurich's duty to defend McHugh would arise if the facts alleged in the underlying Searle and Novovesky complaints fall within, or potentially within, the policy's coverage. "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine*, 154 Ill. 2d at 108.

The policies exclude coverage for bodily injury to an employee of "the insured" arising out of and in the course of employment by "the insured" or in performing duties related to the conduct of "the insured's" business. The parties agree that McHugh is "an insured" under the policies and that bodily injury claims by McHugh employees underlie the contribution actions for which McHugh seeks coverage. The question is, however, whether McHugh is "the insured" under the exclusion such that the exclusion applies to bar coverage of the contribution actions based on those bodily injury claims. If McHugh can be considered "the insured" mentioned in the exclusion, then Zurich need not provide coverage for or defend against the contribution actions.

There is no question that McHugh is "an insured." The parties agree that, pursuant to the definition of "an insured" in the policies, "an insured" applies to both named insureds and additional insureds and McHugh is "an insured" under the policy. The parties disagree, however, about whether "the insured" as used in the employer's liability exclusion is a similarly all-encompassing term. The term "the insured" is not

6

defined in the policies.

McHugh argues the term "the insured" in the exclusion is ambiguous because it is not defined in the policy and can be construed to apply either to (1) any insured seeking coverage, *i.e.*, to JMS or Perdel under its respective policy and any additional insured under those policies, such as McHugh; or (2) only the named insured, *i.e.*, only to JMs or Perdel under its respective policy. McHugh asserts that, because an ambiguous term in an exclusion must be held against the drafter of the policy and construed to give the broadest coverage, the employer's liability exclusion must, therefore, be construed to limit the exclusion to apply only to bodily injury claims filed by employees of a named insured not of an additional insured. Zurich responds that "the insured" is clear and refers to the insured party seeking coverage for a particular claim, no matter whether that insured is a named insured or an additional insured, *i.e.*, any insured party seeking coverage for that claim.

An insurance policy is a contract and subject to the general rules of contract construction. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). The construction of an insurance policy and its provisions is a question of law, which we review *de novo*. *Outboard Marine*, 154 Ill. 2d at 108. A court must determine the intent of the parties when it is construing the policy. *Outboard Marine*, 154 Ill. 2d at 108. "To determine 'the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole [citations], with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract

[citations].' " *Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 529 (1995), quoting *Outboard Marine*, 154 Ill. 2d at 108. If the words in a policy are clear and unambiguous, the court must give them their "plain, ordinary, and popular meaning." (Emphasis omitted.) *Outboard Marine*, 154 Ill. 2d at 108. On the other hand, if the words in a policy are susceptible to more than one reasonable interpretation, the court must consider them ambiguous and construe them strictly against the insurer that drafted the policy and in favor of the insured. *Outboard Marine*, 154 Ill. 2d at 108-09. A contract is not rendered ambiguous just because the parties disagree on its meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153-54 (2004). Nor is it considered unambiguous just because each party insists that the language unambiguously supports its position. *Central Illinois Light Co.,* 213 Ill. 2d at 154. Instead, the determination of whether a contract is ambiguous is a question of law, which we review *de novo. Central Illinois Light*, 213 Ill. 2d at 153-54. Courts must not distort the language of the policy to create ambiguities in order to rewrite the policy. *Butera v. Attorneys' Title Guaranty Fund, Inc.*, 321 Ill. App. 3d 601, 604 (2001). Provisions that limit or, as here, exclude coverage are interpreted liberally in favor of the insured and against the insurer. *Pekin Insurance Co. v. Estate of Robin M. Goben*, 303 Ill. App. 3d 639, 642 (1999).

The court stated the question correctly: could a reasonable person read these policies and conclude "the insured" must mean, as McHugh asserts, the "named insured" because otherwise the policies would have said "an insured"? The answer is

no. As the circuit court noted, "the" creates an ambiguity only if there is some basis in the policy to conclude that "the" refers to someone specific other than McHugh in this instance. There is no such basis here. There is no language in the policies that would lead one to think "the insured" refers only to the named insured. The term "the insured" is not defined in the policies. However, the introductory section of the commercial general liability form (CGL form) provides that "[t]he word 'insured' means any person or organization qualifying as such under Section II - Who is An Insured." The parties agree "an insured" refers to both the named insureds and any additional insured, such as McHugh. Why then should "the insured" be interpreted any differently from "an insured," barring evidence to the contrary? We think the obvious reading of "the insured" is "the insured seeking coverage," which, depending on the circumstances of each particular claim, could be a named insured or an additional insured.

Interpreting "the insured" to mean "the insured seeking coverage" means that both the named insured and the additional insured are equally subject to the exclusion, that the additional insured's coverage is limited to the same extent as the named insured's. If "the insured" referred only to the named insured, as McHugh suggests, then the additional insured would receive more protection under the policy because the employer's liability exclusion could never apply to it. Reading the exclusion narrowly might be the correct interpretation if we considered "the insured" to be ambiguous but, as stated above, we do not. In this case, "the insured seeking coverage" is McHugh, which is seeking coverage for the contribution claims. Because those claims are for

bodily injuries to McHugh's employees allegedly suffered in furtherance of McHugh's projects, Zurich need not provide coverage for those claims.

This determination is reinforced when we look at "Section I - Coverages" of the CGL form. Section 1(1)(a) provides, in part, that "[Zurich] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Zurich] will have the right and duty to defend the insured against any 'suit' seeking those damages." (Emphasis added.) If we read "the insured" to mean only the named insured, then under this section, Zurich would never have to provide coverage to an additional insured for bodily injury or property damage claims or defend an additional insured against such claims. What would be the point of adding McHugh as an additional insured to the policy if McHugh would receive essentially no coverage under the policy? We cannot interpret a policy to reach such an illogical result.

In support of their respective positions, both parties present extensive argument regarding tort law principles, the peculiarities of Illinois construction industry and case law interpreting insurance policies in which the policies define "the insured." We will not belabor these arguments. This is not a tort case but a contract law case, brought to determine the rights of the parties pursuant to their written agreements, pursuant to the agreements they made versus the agreements they should have made. There may be cases discussing the difference between "an insured" and "the insured" in insurance policies where "the insured" is defined. But that is not this case and we cannot, as the

10

circuit court correctly found, import language into the policies that was not put there by the parties. To paraphrase the circuit court, our job is not to determine what the policy should be but what it is. It is what Zurich says it is. The court did not err in granting Zurich's motion for judgment on the pleadings and denying McHugh's judgment on the pleadings.

For the reasons stated above, we affirm the judgment of the circuit court.

Affirmed.

CUNNINGHAM, P.J., and THEIS, J., concur.

1-09-2135

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

---

JAMES MCHUGH CONSTRUCTION CO., an Illinois Corporation,

     Plaintiff-Appellant,

v.

ZURICH AMERICAN INSURANCE COMPANY, an Illinois Corporation,

     Defendant-Appellee.

---

No. 1-09-2135

Appellate Court of Illinois
First District, Second Division

April 13, 2010

---

JUSTICE KARNEZIS delivered the opinion of the court.

CUNNINGHAM, P.J., and THEIS, J., concur.

---

Appeal from the Circuit Court of Cook County.

The Honorable Peter A. Flynn, Judge Presiding.

---

For APPELLANT: Donnelly, Lipinski & Harris, LLC, of Chicago (Scott O. Reed, of counsel)

For APPELLEE: Cremer, Spina, Shaughnessy, Jansen & Siegert, LLC, of Chicago (Brian A. Gallagher and Lana J. Zaretsky, of counsel)